In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1609

WILLIAM R. FLETCHER,

*Plaintiff-Appellee,*

*v.*

CHICAGO RAIL LINK, L.L.C.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 842—**Matthew F. Kennelly**, *Judge.*

ARGUED OCTOBER 29, 2008—DECIDED MAY 28, 2009

Before POSNER, MANION, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, a railroad employee whose job required him to drive a utility vehicle that transports equipment for use in a railroad yard, was injured in a collision with another vehicle (driven by a person having no connection with the railroad) on a street in the yard. He sued the railroad under the Federal Employers Liability Act, 45 U.S.C. §§ 51 *et seq.*, claiming that the accident had been caused by the railroad's failure to maintain the SUV in a safe condition or warn him that it was unsafe.

The jury awarded him damages in excess of $700,000, but also found that his own negligence made him 50 percent responsible for the accident. That finding would have cut his damages in half unless a violation by his employer "of any statute enacted for the safety of employees" had contributed to the accident. 45 U.S.C. § 53; see also § 54. The judge found the exception satisfied and so awarded the plaintiff his full damages. The railroad, the judge ruled, had violated a regulation issued by the Illinois Commerce Commission that requires that company motor vehicles used by railroad workers in their work be maintained in a safe condition. 92 Ill. Admin. Code § 1550.40.

A regulation is not a statute, and a state statute is not a federal statute, and the Supreme Court has held that "any statute" in 45 U.S.C. § 53 means any *federal* statute designed to promote railroad safety. *Seaboard Air Line Ry. v. Horton*, 233 U.S. 492, 503 (1914); see also *Pratico v. Portland Terminal Co.*, 783 F.2d 255, 267-68 (1st Cir. 1985); *Chicago Great Western Ry. Co. v. Peeler*, 140 F.2d 865, 869 (8th Cir. 1944); *Columbia & P.S.R. Co. v. Sauter*, 223 F. 604, 610 (9th Cir. 1915). But in 1970, in section 208(d) of the Federal Railroad Safety Act, Pub. L. 91-458, 84 Stat. 971-94 (1970), Congress provided that "any statute" in section 53 includes "rules, regulations, standards, and requirements in force, or prescribed or issued . . . by any State agency which is participating in investigative and surveillance activities pursuant to" 49 U.S.C. § 20105. Section 208(d), first codified as 45 U.S.C. § 437(c), is now codified as 45 U.S.C. § 54a. The current language is slightly different from the original language (the current language is that "a regulation, standard, or requirement in force, or prescribed

by . . . a State agency that is participating in investigative and surveillance activities under section 20105 of Title 49 is deemed to be a statute under sections 53 and 54 of this title"). But the meaning is unchanged. H.R. Rep. No. 180, 103d Cong., 1st Sess. 1, 5, 492 (1993).

So we go to section 20105(a) and discover that it provides that the Secretary of Transportation "may prescribe investigative and surveillance activities necessary to enforce . . . [his] safety regulations" and that a "State may participate in those activities when the safety practices . . . are regulated by a State authority." Illinois is a participant. "State Railroad Safety Technical Training Funding Agreement" between the Illinois Rail Safety Program Administrator and the Associate Administration for Safety of the Federal Railroad Administration, Feb. 14, 2005; "State Rail Safety Program Managers,"www.fra.dot.gov/downloads/safety/StateManagers2009.pdf (visited Apr. 28, 2009). The district judge ruled that *any* regulation of railroad worker safety (such as the vehicular-safety provision of the Illinois Administrative Code) issued by a state that participates in the investigative and surveillance activities specified in section 20105, as Illinois does, is a safety statute encompassed by 45 U.S.C. § 54a.

The railroad argues that only state regulations (standards, requirements, etc.) that enforce "federal railroad safety laws," a term defined in a regulation issued by the Department of Transportation, 49 C.F.R. § 212.3(d), qualify under section 54a; and the plaintiff points to no such law that regulates the use of motor vehicles by

railroad workers. The railroad's interpretation is plausible, but we need not adopt (or for that matter reject) it in order to decide the case.

Section 54a of Title 45 and section 20105(a) of Title 49, when they are read together, make clear that state regulations, requirements, etc., are deemed federal safety regulations only when they make the state a participant in the enforcement of such regulations. The district judge disregarded this limitation because the Illinois regulation in question had been in force when the original of section 54a was enacted and he thought that therefore it did not have to relate to any federal regulation. But on that view, Congress gave the force of federal law to all state railroad safety regulations in existence then even if they did not further federal goals, and this is neither a plausible interpretation nor one compelled by the language of the statute or its legislative history. See H.R. Rep. No. 1194, 91st Cong., 2d Sess. 22 (1970); S. Rep. No. 619, 91st Cong., 1st Sess. 12, 25 (1969). Section 54a requires treating state regulations that support or implement federal safety norms as if they were federal regulations, but there is no basis for thinking that the statute goes further than that. Why would Congress want the federal courts to enforce state safety regulations (in this case, by doubling a damages award on the basis of such a regulation) unrelated to any safety concerns of federal law?

The district judge's interpretation would lead to irrational disparities in the enforcement of section 54a. Suppose Indiana unlike Illinois does not participate in the

section 20105 program (in fact, as far as we can determine, it does not, "State Rail Safety Program Managers," w w w . f r a . d o t . g o v / d o w n l o a d s / s a f e t y / S t a t e Managers2009.pdf (visited Apr. 28, 2009)). Then if it had a vehicular-safety regulation identical to section 1550.40 of the Illinois Administrative Code, that regulation would not be treated as a safety statute under the FELA, though Illinois's would be. The difference in treatment, which would affect damages awards in FELA cases, would make no sense. The FELA would mean one thing in Illinois and another thing in Indiana even with regard to identical accidents in two states that had identical safety regulations. This would be contrary to Congress's determination that "laws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1); see also H.R. Rep. No. 1194, *supra*, at 11-12.

This anomaly would disappear if by virtue of Illinois's participation in the section 20105 program the violation of a federal railroad safety regulation was less likely in Illinois because Illinois engaged in investigative and surveillance activities in support of a federal regulation. Federal law regulates the carriage by rail of materials that could be hazardous to workers, and Illinois, as part of its participation in the section 20105 program, requires reports concerning such materials in order to assist state and federal safety inspectors in assuring compliance with the federal standard. "Inspections Program," Illinois Commerce Commission, available at http://www. icc.illinois.gov/railroad/InspectionsProgram.aspx (visited Apr. 28, 2009); see 49 U.S.C. § 20105(b)(1)(B). That require-

ment, which we assume is not duplicated in all states, nevertheless does not create a disuniformity in federal railroad worker safety standards, whether substantive or (as in this case) remedial, across states. It just means that some states are aiding in the enforcement of a federal standard, and others not.

Illinois's participation in a reporting program is not the best example of a safety regulation that if violated would increase a plaintiff's damages, 45 U.S.C. §§ 53, 54, 54a, because it is unlikely that violating a reporting requirement would contribute to an accident—though it could, if as a result of the failure to file a report on some hazardous material the hazard was not discovered until a worker had been injured by it. We haven't found better examples, however, and the reason seems to be the comprehensiveness of the federal regulation of railroad safety. The state of Washington, for example, is like Illinois a participant in the section 20105 program, "State Rail Safety Program Managers," www.fra.dot.gov/downloads/safety/StateManagers2009.pdf (visited Apr. 28, 2009), but it has been content to adopt by reference federal railroad safety regulations, and then—in order to discharge its duty of investigation and surveillance—to provide that all violations of the incorporated safety provisions "will be submitted to the Federal Railroad Administration for enforcement action pursuant to" the state's participation in the federal program. E.g., Wash. Admin. Code § 480-62-200(*l*)(3).

The railroad also quarrels with some of the expert evidence presented at the trial of this case, but we do not

think that the district judge abused his discretion in allowing the jury to consider that evidence. So the determination of liability is affirmed, but the damages must be halved.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH DIRECTIONS.