

# SUPREME COURT OF MISSOURI
## en banc

CHRISTOPHER COLE,         )
                                     )                *Opinion issued June 10, 2025*

      Respondent,         )

                                     )

v.                                  )                No. SC100788

                                     )

THE KANSAS CITY SOUTHERN   )
RAILWAY COMPANY,         )

                                     )

      Appellant.          )

## APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable David Lee Vincent III, Judge

The Kansas City Southern Railway Company ("KCSR") appeals the entry of judgment in Christopher Cole's favor following a jury trial. After sustaining serious injuries while working for KCSR, Cole brought a negligence claim under the Federal Employers' Liability Act ("FELA") premised on two theories of recovery: general negligence and negligence *per se*. Cole's claim arose out of a workplace accident in which Cole fell onto railroad tracks, a KCSR train ran over his legs, and Cole's resultant injuries required amputations on both legs. Finding KCSR liable, the jury awarded Cole $12 million in damages, and the circuit court entered judgment accordingly. Subsequently, the circuit court amended its judgment and awarded Cole post-judgment interest. For the

reasons discussed below, the Court affirms the circuit court's judgment in many respects but vacates the $12 million damages award and entry of post-judgment interest. Because the jury found Cole 21 percent at fault, this Court remands to the circuit court to reduce the $12 million award to account for Cole's contributory negligence and enter judgment in Cole's favor in the amount of $9.48 million. The circuit court's judgment shall be entered without post-judgment interest as Cole's request for this additional award was made after the circuit court's original judgment became final.

**Factual and Procedural Background[1]**

### 1.    Cole's Accident and Suit Against KCSR

Cole was injured while working for KCSR, a railroad incorporated in Missouri that operates in various states. In April 2020, Cole and his crew arrived at a freight service provider facility in Illinois to swap empty railcars for loaded ones. The crew consisted of Cole, the brakeman; Brandi Foulk, the engineer; and the conductor. As brakeman, Cole uncoupled railcars from the train and operated switches on the ground to route the train onto different tracks.

Immediately before the incident, Cole stood on the ground facing the tracks. In front of Cole and to his left stood a railcar switch stand. To Cole's right was a derail sign indicating to train operators the presence of the switch stand. The freight facility was at a distance behind Cole on his left side. The train consisted of the lead locomotive operated

---

[1] "The facts are presented in the light most favorable to the jury's verdict, giving [Cole] the benefit of all reasonable inferences and disregarding any evidence and inferences that conflict with the verdict." *All Star Awards & Ad Specialties, Inc. v. HALO Branded Sols., Inc.*, 642 S.W.3d 281, 285 n.3 (Mo. banc 2022).

by Foulk, a second locomotive attached to the lead, and railcars attached to the second locomotive and each other.

After the crew replaced an empty railcar with a loaded one, Foulk drove the train forward, away from the freight facility and toward Cole. The train then came to a complete stop for approximately 18 seconds, with the lead locomotive in front of Cole to his right and the second locomotive down the track to his left. While the train was stopped, Cole remained in place facing the tracks with the derail sign to his right.

After the stop, Foulk pulled the train forward to Cole's right. Without notifying Foulk, Cole attempted to board the second locomotive while the train was moving. As Cole stepped onto the locomotive's lower step, he moved forward with the train and struck the derail sign, causing him to fall onto the tracks. After Cole fell, a railcar ran over his legs. Cole's resulting injuries necessitated multiple amputation surgeries on both legs.

Despite being a distance from the accident, a security camera at the freight facility captured Cole's fall. Additionally, video from the lead locomotive showed Cole's location just before the train moved forward and his attempted effort to board the moving train.

In May 2020, Cole sued KCSR. He alleged KCSR was negligent *per se* under FELA, 45 U.S.C. sections 53 and 54a, based on KCSR's alleged violation of an Illinois close clearance regulation – Illinois Administrative Code title 92 section 1500.270, which provides that "[n]o part of any sign or appurtenance attached to . . . poles or posts shall be less than 8 feet from the centerline of an adjacent track[.]" Cole alleged KCSR permitted the derail sign to be placed and maintained within eight feet of the adjacent track in

3

violation of Illinois' close clearance regulation and this violation constituted *per se* negligence that resulted in whole, or in part, in injury to Cole.

Additionally, Cole asserted general negligence based, in part, on his allegation KCSR failed to provide reasonably safe working conditions. Cole alleged various negligent acts caused his injuries, including an allegation that KCSR permitted the derail sign to be placed and maintained too close to the track in violation of the Illinois close clearance regulation. Cole requested damages, costs, and "such other relief as is just and proper," but he did not request post-judgment interest.

KCSR admitted the derail sign that stuck Cole was located six feet, four inches, from the centerline of the track in violation of Illinois' close clearance regulation. However, KCSR contended the derail sign did not cause Cole's fall and submitted evidence that it did not know who placed the derail sign too close to the centerline of the track. KCSR asserted the affirmative defense of contributory negligence, claiming Cole's attempt to board the moving train caused his injuries.

The parties tried the case to a jury for nine days in October and November 2020.

**2.      Relevant Testimony at Trial**

At trial, Cole testified KCSR permitted employees to board trains at walking speed – approximately four miles per hour – and that he was trained to never attempt to board a moving train at greater speed. Cole's role as brakeman did not require he board moving trains, but Cole commonly did.

Cole testified that, on the day of the accident, he attempted to board the second locomotive, believing there was adequate space for him to board safely. Cole stated that,

4

as he stepped onto the locomotive's lowest step, the derail sign struck him. Cole claimed the derail sign caused his fall. Cole admitted he could have walked past the derail sign before attempting to board, and knew he should not board near the derail sign because it posed a hazard to his intended movement.

Cole admitted he did not notify Foulk, the engineer, that he planned to board the moving train. KCSR's safety rules instruct employees to notify the engineer in advance of boarding a moving train to allow the engineer to slow the train to walking speed. Cole said he was not trained regarding this rule but admitted he was taught to notify the engineer he was attempting to board if the train was moving and the engineer could not see him.

At the time of his accident, Cole had no written notice or warnings from KCSR that the derail sign was a close clearance. Cole acknowledged, however, that KCSR trained him to identify a close clearance as an object or structure that prevents the safe passage of an employee riding the side of a moving train.

Cole subpoenaed Foulk to compel her testimony at trial. KCSR objected, asserting attorney-client privilege. The circuit court permitted Cole's counsel to ask Foulk about her pretrial communications with KCSR's legal counsel regarding the case. Foulk testified she understood KCSR's attorneys represented her as an employee of KCSR and her meetings with KCSR were protected by attorney-client privilege. Foulk stated she had been "called into" KCSR's attorneys' offices to speak with them but did not seek representation from or hire them and had not actively sought representation from any attorney. In particular, Foulk testified she told KCSR's counsel that, based on the locomotive video and the freight facility's surveillance video, she believed the derail sign struck Cole and caused him to

5

fall. Both videos were admitted into evidence without objection. Throughout the remainder of the trial, Cole's counsel repeatedly referred to Foulk's testimony that she believed the derail sign caused Cole's fall.

Foulk testified further that Cole did not notify her he planned to attempt boarding the moving train and she could not recall the speed of the train when she looked back and saw Cole on the ground.

### 3. KCSR's Motions at the Close of Evidence and the Circuit Court's Instructions to the Jury

At the close of both Cole's evidence and the close of all evidence, KCSR moved for a directed verdict, asserting Cole failed to prove KCSR had violated any statute, including Illinois' close clearance regulation, that supported or implemented federal safety law or regulations under FELA. Accordingly, KCSR asserted the circuit court should direct a verdict in its favor on Cole's negligence *per se* theory because failing to do so would deprive KCSR of its contributory negligence defense. The circuit court overruled KCSR's motions.

Relevant to this appeal are three jury instructions the circuit court submitted to the jury: Instruction 8, which instructed the jury regarding negligence *per se* based on KCSR's alleged violation of Illinois Administrative Code section 1500.270; Instruction 9, which pertained to Cole's general negligence theory; and Instruction 10, which instructed the jury regarding contributory negligence and allowed the jury to consider Cole's own negligence when examining his claim under the theory of general negligence. The court also submitted a verdict director permitting the jury to assess Cole's contributory negligence only with

respect to Cole's general negligence theory submitted in Instructions 9 and 10. KCSR objected, arguing Instruction 8 and Cole's verdict form deprived it of the contributory negligence defense to which it was entitled under FELA. The circuit court overruled KCSR's objection.

### 4. The Circuit Court's Judgment and Amended Judgment

On November 4, 2022, the jury returned a verdict for Cole on his claim for damages under both negligence theories. The jury found KCSR 79 percent at fault and Cole 21 percent at fault and assessed Cole's total damages at $12 million. The same day, the circuit court entered judgment against KCSR for the total damages without any reduction for Cole's contributory negligence. The judgment did not provide for or mention post-judgment interest.

On December 5, 2022, KCSR moved for a new trial and for judgment notwithstanding the verdict ("JNOV"). On January 12, 2023, the circuit court heard and overruled both motions.

On January 20, 2023, Cole filed a motion to amend the judgment to award post-judgment interest under section 408.040.3.[2] The circuit court set a motion hearing for the same day. Before the hearing, KCSR filed suggestions in opposition to Cole's motion, arguing the circuit court lacked jurisdiction to amend the judgment because the November 2022 judgment became final when the circuit court overruled KCSR's after-trial motions

---

[2] All references to section 408.040 are to RSMo 2016 unless otherwise noted.

for a new trial and JNOV. That afternoon, the court sustained Cole's motion and entered an amended judgment awarding post-judgment interest.

After an opinion by the court of appeals, KCSR sought and was granted transfer to this Court.[3] KCSR raises four points: the circuit court erred in (1) permitting Cole's counsel to ask KCSR's employee – Foulk – about her communications with KCSR's attorneys before trial, (2) submitting jury Instruction 8 and the corresponding verdict director, (3) failing to grant KCSR a verdict in full or in part on Cole's negligence *per se* claim, and (4) entering its January 20, 2023, amended judgment.

## KCSR's Arguments on Appeal

### I. Attorney-Client Privilege

KCSR contends the circuit court erred in admitting Foulk's testimony at trial related to her pretrial statements to KCSR's attorneys. Before trial, Foulk told KCSR's attorneys that, based on her review of the freight facility's and lead locomotive's videos and her familiarity with the scene, she believed the derail sign caused Cole to fall. KCSR argues Foulk's statements to its attorneys were protected by attorney-client privilege by virtue of (a) Foulk's attorney-client relationship with KCSR's counsel and (b) KCSR's attorney-client relationship with those attorneys. KCSR claims the circuit court's admission of Foulk's testimony constitutes reversible error warranting a new trial.

---

[3] This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

8

**Standard of Review**

Because KCSR challenges an evidentiary ruling and the application of a legal issue to factual circumstances, two standards of review are implicated: abuse of discretion for the circuit court's evidentiary ruling and *de novo* for its application of law to its evidentiary findings.

"This Court gives deference to the [circuit] court's evidentiary rulings and will reverse the [circuit] court's decision about the admission or exclusion of evidence only if the [circuit] court clearly abused its discretion." *St. Louis Cnty. v. River Bend Estates Homeowner's Ass'n*, 408 S.W.3d 116, 123 (Mo. banc 2013); *see also DeLaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526, 531 (Mo. App. 1991) (reviewing a circuit court's admission of evidence over a party's objection that the evidence was protected by attorney-client privilege for an abuse of discretion). This Court will reverse the circuit court's evidentiary ruling only if the ruling "is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *St. Louis Cnty.*, 408 S.W.3d at 123 (internal quotation omitted).

While a circuit court's factual findings and credibility determinations are given substantial deference, *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 627 (Mo. banc 2014), a circuit court's application of law to its factual findings is reviewed *de novo*. *State v. Hooper*, 552 S.W.3d 123, 129 (Mo. App. 2018); *see also State v. Taylor*, 298 S.W.3d 482, 492 (Mo. banc 2009). Thus, whether the facts of a case as found by the circuit court can give rise to attorney-client privilege presents an issue of law this Court reviews *de novo*. *Hooper*, 552 S.W.3d at 129.

9

**Analysis**

### A. The Circuit Court Did Not Err in Finding Foulk and KCSR's Attorneys Did Not Have an Attorney-Client Relationship

Whether Foulk had an attorney-client relationship with KCSR's attorneys is determined by reviewing the evidence adduced at trial. *See McFadden v. State*, 256 S.W.3d 103, 106 (Mo. banc 2008), *abrogated on other grounds by Price v. State*, 422 S.W.3d 292, 307 (Mo. banc 2014); *see also* Rule 4, Preamble, [17] ("Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.").

"An attorney-client relationship is established when a prospective client seeks and receives legal advice and assistance from an attorney who intends to provide legal advice and assistance to the prospective client." *Polish Roman Catholic St. Stanislaus Parish v. Hettenback*, 303 S.W.3d 591, 601 (Mo. App. 2010). "In determining whether the legal advice and assistance of an attorney is sought and received, courts look to the substantive nature of the contacts within the relationship, 'regardless of what formal or procedural incidents have occurred[.]'" *Id.* (alteration in original) (quoting *McFadden*, 256 S.W.3d at 107). When parties dispute whether an attorney-relationship exists, "this Court looks at the conduct of the parties to determine whether such a relationship exists." *McFadden*, 256 S.W.3d at 106. The party asserting attorney-client privilege bears the burden of proving the privilege bars disclosure of the communication. *Hutchison v. Steinke*, 353 S.W.2d 137, 144 (Mo. App. 1962).

Inconsistent evidence was presented to the circuit court as to whether an attorney-client relationship existed between Foulk and KCSR's attorneys. Foulk testified she had "not hired anybody" when asked whether she had hired KCSR's attorneys to represent her for any purpose. Foulk stated she had been "called into" KCSR's attorneys' offices to speak with them but did not seek representation from or hire KCSR's attorneys and had not actively sought representation from any attorney. Foulk further testified she had not signed any written agreement to have KCSR's attorneys represent her, told KCSR's attorneys she needed a lawyer to represent her, or asked them to represent her.

On the other hand, Foulk testified that, when she met with KCSR's attorneys before trial to discuss the case, she understood KCSR's attorneys were representing her and the meetings were protected by attorney-client privilege. Additionally, when asked whether she viewed KCSR's attorneys as her own in the case, Foulk responded, "Yes, I would guess so."

The circuit court carefully considered Foulk's testimony before finding she had no attorney-client relationship with KCSR's attorneys. Specifically, the circuit court found:

> [Foulk] testified that she did not hire any attorney. Does not want any attorney. And then I think under [KCSR's examination of Foulk], it was an understanding during [KCSR's attorneys'] conversation with her that [they] tried to convince her [KCSR's attorneys] were . . . her attorney[s].

> It didn't appear to me that there was an attorney-client relationship between [KCSR's attorneys] and [Foulk].

The circuit court's factual findings are supported by the record, and this Court defers to the circuit court's credibility determination. *See Hooper*, 552 S.W.3d at 129; *see also Holmes v. Union Pac. R.R.*, 617 S.W.3d 853, 857 (Mo. banc 2021) (holding a circuit court's

11

discretionary rulings are presumed correct). The circuit court carefully considered the evidence presented, and its conclusion that KCSR failed to meet its burden of showing an attorney-client relationship existed between Foulk and KCSR's attorneys is not against the logic of the circumstances. Accordingly, KCSR's assertion Foulk's testimony was protected due to her attorney-client privilege with its attorneys is without merit.

**B. KCSR's Corporate Attorney-Client Privilege Did Not Extend to Foulk**

Finally, KCSR argues Foulk's statements to its attorneys were protected by KCSR's own attorney-client privilege with the attorneys who interviewed Foulk before trial. For a company to show attorney-client privilege covers a communication between its attorneys and an employee, Missouri courts have held that the company must establish four elements:

> (1) the communication was made for the purpose of securing legal advice; **(2) the employee making the communication did so at the direction of his corporate superior**; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*DeLaporte*, 812 S.W.2d at 531 (emphasis added) (citing *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 608-09 (8th Cir. 1978)).

KCSR failed to present evidence to satisfy the second *DeLaporte* factor: that Foulk communicated with KCSR's attorneys at the direction of her corporate superior. Foulk testified that she was "called into" KCSR's attorneys' offices to talk to them. Evidence that *someone* called in Foulk to speak with KCSR's attorneys is not sufficient to show she did so at the direction of a corporate superior. *See id.*, 812 S.W.2d at 531; *cf. Upjohn Co.*, 449 U.S. at 386-87 (finding attorney-corporate client privilege shielded the employees'

12

testimony because they communicated with corporate counsel at the direction of their corporate superior for purposes of attorney-client privilege where, unlike the circumstances here, the corporation's chairman requested in writing that the employees answer questions for an internal legal investigation). Because KCSR did not submit sufficient evidence to satisfy all four *DeLaporte* factors, it cannot show its corporate attorney-client privilege prohibited admitting Foulk's statements to its counsel.

## II. KCSR's Entitlement to a Contributory Negligence Defense Under FELA

KCSR contends the circuit court erred in submitting Instruction 8 and the corresponding verdict director to the jury over its objection because Instruction 8 and the verdict director, given together, deprived KCSR of the contributory negligence defense to which it was entitled under section 53 of FELA. For the same reason, KCSR also argues the circuit court erred in overruling its motion for a directed verdict on Cole's negligence *per se* theory.

### Standard of Review

KCSR alleges the circuit court misapplied FELA when it submitted Instruction 8 and the corresponding verdict director to the jury. When an alleged error turns on the proper interpretation of a statute, the standard of review is *de novo*. *M.O. v. GEICO Gen. Ins. Co.*, 657 S.W.3d 215, 216 (Mo. banc 2023). "To reverse on grounds of instructional error, the party claiming the error must establish prejudice because the instruction misdirected, misled or confused the jury." *Children's Wish Found. Int'l, Inc. v. Mayer Hoffman McCann, P.C.*, 331 S.W.3d 648, 654 (Mo. banc 2011). If a circuit court's instructional error prejudiced a party, the circuit court's submission of the instruction

13

should be reversed.  *See Sorrell v. Norfolk S. Ry. Co.*, 249 S.W.3d 207, 209-10 (Mo. banc 2008).

## Analysis

Under FELA, railroads have "a duty to provide [their] employees with a reasonably safe place to work."  *Giddens v. Kan. City S. Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000).  KCSR alleges the circuit court erred in interpreting FELA.  Specifically, KCSR claims the circuit court's interpretation of FELA resulted in the submission of Instruction 8 and the corresponding verdict director to the jury and overruling KCSR's motion for a directed verdict, all of which improperly limited the contributory negligence defense to which it was entitled under section 53 of FELA.

FELA provides that a railroad is liable for damages when its employee is injured due in whole or in part to the railroad's negligence.  *See* 45 U.S.C. sec. 51.  Section 53 governs contributory negligence in FELA actions:

> In all actions . . . brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, . . . the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, *but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee*:  Provided, That no such employee who may be injured . . . shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier *of any statute enacted for the safety of employees* contributed to the injury or death of such employee.

45 U.S.C. sec. 53 (emphasis added).  Thus, under section 53, if a jury finds a railroad employee contributorily negligent, it must diminish damages in proportion to the employee's negligence.  *See id.*  If, however, a railroad violates "any statute enacted for

14

the safety of employees" and that violation causes or contributes to an employee's injury, then any contributory negligence by the employee cannot be considered in apportioning damages. *See id.* The United States Supreme Court, in *Seaboard Air Line Railway. v. Horton*, 233 U.S. 492, 503 (1914), interpreted "any statute" to mean only any federal statute and to exclude all state laws and regulations.

After *Seaboard*, however, Congress enacted 45 U.S.C. section 54a, which extends the meaning of "any statute" under section 53 to include any "regulation . . . prescribed . . . *by a State agency that is participating in investigative and surveillance activities under* section 20105 of Title 49." (Emphasis added).

49 U.S.C. section 20105, part of the Federal Railroad Safety Act, governs state participation in "investigative and surveillance activities." Section 20105(a) provides that the Secretary of Transportation:

> may prescribe investigative and surveillance activities necessary to enforce the safety regulations prescribed and orders issued by the Secretary that apply to railroad equipment, facilities, rolling stock, and operations in a State. The State may participate in those activities when the safety practices for railroad equipment, facilities, rolling stock, and operations in the State are regulated by a State authority. . . .

Although the Supreme Court has not interpreted 45 U.S.C. section 54a or 49 U.S.C. section 20105, the United States Court of Appeals for the Seventh Circuit – which serves Illinois – has. In *Fletcher v. Chicago Rail Link, L.L.C.*, 568 F.3d 638 (7th Cir. 2009), a railroad employee sued his employer for damages under FELA in Illinois federal district court. *Id.* The jury awarded the employee damages but found him 50 percent at fault. *Id.* Pursuant to section 53, the employee's damages award would be cut in half due to his

contributory negligence unless the railroad violated "any statute enacted for the safety of employees" and that violation contributed to the employee's injury. *Id.* The district court held the railroad violated a "statute enacted for the safety of employees" by violating an Illinois regulation and awarded the employee full damages. *Id.* at 638-39. The district court reasoned that "*any* regulation of railroad worker safety issued . . . by a state that participates in the investigative and surveillance activities specified in section 20105, as Illinois does, is a safety statute encompassed by 45 U.S.C. [section] 54a." *Id.* at 639 (emphasis in original). Thus, the district court awarded the employee all the damages the jury found and did not reduce his damages award by 50 percent. *Id.* at 638.

On appeal, the Seventh Circuit reversed the district court's damages award.[4] *Id.* at 641. The federal appellate court reasoned "[s]ection 54a of Title 45 and section 20105(a) of Title 49, when they are read together, make clear that state regulations . . . are deemed federal safety regulations *only* when they make the state a participant in the enforcement of such regulations." *Id.* at 639 (emphasis added). "Section 54a requires treating state regulations that support or implement federal safety norms as if they were federal regulations, but there is no basis for thinking that the statute goes further than that." *Id.* at 640.[5]

---

[4] The Seventh Circuit did not remand to the federal district court for a new trial but, rather, remanded the case for the district court to reduce the employee's damages award by 50 percent. *Fletcher*, 568 F.3d at 641.

[5] The Seventh Circuit's holding may seem in tension with the plain language of 45 U.S.C. section 54a and 49 U.S.C. section 20105(a), but its decision has remained undisturbed for more than 15 years. Presumably, Congress would have amended these statutes if it was offended by the ruling. It also would be unreasonable for this Court to interpret these

Illinois' close clearance rule – section 1500.270 of the Illinois Administrative Code – is a regulation related to railroad safety, but it does not support or implement federal safety regulations and, thus, is not "a safety statute" for the purposes of FELA. Illinois participates in section 20105 investigative and surveillance activities, but its close clearance regulation is not a safety statute as defined in section 54a. There is no federal statute or regulation establishing nationwide close clearance safety norms.[6] Without federal close clearance safety norms or regulations for Illinois to support or implement, Illinois' regulation of close clearances is merely a state railroad safety law. Therefore, Illinois' close clearance regulation is not a "federal safety regulation" for purposes of section 54a and, consequently, not a "statute" under section 53 of FELA.

Because Illinois' close clearance regulation is not a "statute" under FELA, the derail sign's placement too close to the centerline of the track did not constitute a violation "of any statute enacted for the safety of employees" and Cole's "damages [should have been] diminished by the jury in proportion to the amount of negligence attributable to [Cole]." *See* 45 U.S.C. sec. 53. Therefore, the circuit court erred in overruling KCSR's objection to the submission of Instruction 8 and the corresponding verdict form to the jury. By overruling KCSR's objection, the circuit court effectively found that, although KCSR was

---

statutes differently than the federal court and limit the defense of contributory negligence in Missouri for accidents occurring in Illinois when contributory negligence would be applied if the same accident were litigated in Illinois. These factors weigh in favor of this Court following the Seventh Circuit's holding in *Fletcher*.

[6] The Federal Railroad Administration has promulgated one close clearance regulation, but it is specific to the Texas Central Railroad and, thus, does not establish a nationwide federal safety norm. *See* 49 C.F.R. sec. 299.401.

entitled to a contributory negligence defense on Cole's general negligence theory as a matter of law, fault could not be apportioned between the parties if the jury found in Cole's favor on his negligence *per se* submission.

For the same reasons the circuit court erred in submitting Instruction 8 and the corresponding verdict director, the circuit court also erred in overruling out-right KCSR's motion for a directed verdict. Because KCSR's alleged violation of Illinois' close clearance regulation does not preclude considering Cole's contributory negligence in assigning fault, KCSR was entitled to a directed verdict, at least in part, on Cole's negligence *per se* claim. Specifically, KCSR's motion for directed verdict should have been sustained to limit the submission of the close clearance regulation violation as negligence *per se* without the opportunity to allocate contributory negligence to Cole.[7]

The circuit court's submission of Instruction 8 along with the corresponding verdict director and its out-right overruling of KCSR's motion for directed verdict improperly deprived KCSR of its contributory negligence defense. Accordingly, the circuit court prejudiced KCSR by awarding damages to Cole without reducing the award in accordance with the fault the jury attributed to Cole.

---

[7] The Court need not determine whether KCSR's motion for directed verdict should have been sustained in full and, consequently, whether Cole's negligence *per se* submission should have been completely dismissed. KCSR's sole argument on appeal is that the circuit court's overruling of its motion for directed verdict limited its contributory negligence defense. Having determined that the circuit court improperly limited KCSR's contributory negligence defense, there is no reason for this Court to further consider the viability of Cole's negligence *per se* submission and grant more relief than is necessary to address the harm or prejudice the circuit court's error caused.

18

### III.  The Circuit Court's Authority and Jurisdiction to Award Cole Post-Judgment Interest

KCSR argues the circuit court did not have authority to enter its January 20, 2023, judgment awarding Cole post-judgment interest because the circuit court lost jurisdiction when it overruled KCSR's timely post-trial motions.  Accordingly, KCSR requests this Court vacate the circuit court's post-judgment interest award in its January 2023 amended judgment.

**Standard of Review**

Whether a circuit court has jurisdiction over a case at the time it enters a judgment is a question of law this Court reviews *de novo*.  *See McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 476 (Mo. banc 2009).  Additionally, this Court reviews interpretation of its rules and Missouri statutes *de novo*.  *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 662 (Mo. banc 2014).  "When only legal issues are at stake, this Court reviews the [circuit] court's judgment *de novo*."  *Id.*

**Analysis**

**A. The Circuit Court Lacked Authority to Amend Its Final Judgment**

A circuit court may amend a judgment disposing of all the claims in a case under limited circumstances.

Rule 75.01 provides a circuit court retains control over a judgment "during the thirty-day period after entry of judgment" and may "vacate, reopen, correct, amend, or modify its judgment within that time."  *See* Rule 75.01.  Accordingly, a circuit court is "empowered to amend, vacate, reopen or modify upon its own motion for [30] days after

19

entry of judgment." *SKMDV Holdings, Inc. v. Green Jacobson, P.C.*, 494 S.W.3d 537, 561 (Mo. App. 2016).

Next, a circuit court may amend a judgment disposing of all claims in a suit if a party files a timely authorized after-trial motion. "Once the thirty-day period in Rule 75.01 expires, a [circuit] court's authority to grant relief is constrained by and limited to the grounds raised in a timely filed, authorized after-trial motion." *Heifetz v. Apex Clayton, Inc.*, 554 S.W.3d 389, 393 (Mo. banc 2018) (internal quotation omitted). Rule 78.07(d) states "[t]he [circuit] court may amend . . . any judgment in accordance with Rule 75.01 or upon any motion by any party." Additionally, under Rule 78.04, a party can extend the 30-day period during which a circuit court has authority to amend its judgment by filing either a motion for a new trial or to amend the judgment within 30 days after the circuit court issues its original judgment. When a party files a timely authorized after-trial motion, the circuit court retains jurisdiction to rule on such a motion for 90 days after the motion is filed, after which the judgment becomes final and the court loses jurisdiction to amend the judgment. *See* Rule 81.05(a)(2)(A). Under Rule 81.05(a)(2), however, this 90-day extension terminates, and the circuit court loses jurisdiction when the circuit court rules, or declines to rule, on all timely authorized after-trial motions. *See* Rule 81.05(a)(2)(A)-(B); *see also Cupit v. Dry Basement, Inc.*, 592 S.W.3d 417, 425 (Mo. App. 2022) (holding the circuit court's judgment became final and it lost jurisdiction when it overruled all timely after-trial motions 81 days after its original judgment); *Heifetz*, 554 S.W.3d at 392 (finding a party's motion for JNOV had been overruled because the circuit court did not rule on it within 90 days).

20

Here, the circuit court entered its judgment disposing of all the claims raised in the case on November 4, 2022. Rule 75.01 permitted the circuit court to amend its judgment up until December 5, 2022, which it did not do.[8] Pursuant to Rules 78.04 and 78.07, KCSR filed its authorized after-trial motions for a new trial and JNOV within 30 days, on December 5, 2022. Accordingly, KCSR's motions were timely and, pursuant to Rules 74.04 and 81.05(a)(2)(A), the circuit court retained authority to rule on KCSR's motions for an additional 90 days – until March 5, 2023. On January 12, 2023, the court heard and overruled both motions. Cole, however, filed his motion to amend the judgment to award post-judgment interest on January 20, 2023, well after the 30-day time period during which parties may file a motion to amend under rule 78.07(d). Cole's motion was not timely. When the circuit court overruled KCSR's motions on January 12, 2023, it disposed of all timely authorized after-trial motions and lost jurisdiction. As a result, the circuit court lacked authority to amend its judgment to award Cole post-judgment interest. *See State ex rel. AJKJ, Inc. v. Hellman*, 574 S.W.3d 239, 242 (Mo. banc 2019) (explaining that, once the circuit court rules on all timely authorized after-trial motions, "any attempt by the [circuit] court to continue to exhibit authority over the case, whether by amending the judgment or entering subsequent judgments, is void." (internal quotation omitted)).

Cole asserts Rule 74.06(a) permitted the circuit court to amend its November 2022 judgment to correct its mistake: neglecting to award Cole post-judgment interest as

---

[8] Because 30 days from November 4, 2022, when the circuit court issued its judgment, fell on Sunday, December 4, 2022, the 30-day period was extended until Monday, December 5, 2022. *See* Rule 44.01(a).

required by section 408.040.3.  Rule 74.06(a) authorizes a circuit court to enter a nunc pro tunc judgment to correct "[c]lerical mistakes in judgments . . . and errors therein arising from [an] oversight or omission."  *See also McGuire*, 447 S.W.3d at 664 ("Rule 74.06(a) codified common law nunc pro tunc.").  Rule 74.06(a) permits the circuit court to correct such mistakes or errors "of its own initiative or on the motion of any party."  Section 408.040.1 provides "[j]udgments *shall* accrue interest on the judgment balance as set forth in this section." (Emphasis added).  Section 480.040.3, which governs tort actions such as Cole's negligence claims, provides:

> [I]nterest shall be allowed on all money due upon any judgment or order of any court from the date judgment is entered by the [circuit] court until full satisfaction.  All such judgments and orders for money *shall* bear a per annum interest rate equal to the intended Federal Funds Rate, as established by the Federal Reserve Board, plus five percent, until full satisfaction is made.  The judgment *shall* state the applicable interest rate, which shall not vary once entered.

(Emphasis added).  The language of section 408.040 indicates the circuit court must impose a post-judgment interest rate in its judgment.  *See State ex rel. Universal Credit Acceptance, Inc. v. Reno*, 601 S.W.3d 546, 548 (Mo. banc 2020) ("Generally, the word 'shall' connotes a mandatory duty." (internal quotation omitted)).

Rule 74.06, however, does not authorize the circuit court to amend its judgment to comply with this statute.  "[C]orrection of [a] mistake must be clerical insofar as it must not [a]ffect a substantive change to the party's rights."  *McGuire* 447 S.W.3d at 663; *see also Higher Educ. Assistance Found. v. Hensley*, 841 S.W.2d 660, 662-63 (Mo. 1992) (per curiam) (defining a "clerical mistake" as "a mistake in writing or copying" (internal quotation omitted)).  Rule 74.06(a) "can only be used to make corrections that were omitted

22

from the judgment but were actually done and evidenced in the record." *McGuire*, 447 S.W.3d at 664 (internal quotation omitted); *see also Pirtle v. Cook*, 956 S.W.2d 235, 240 (Mo. banc 1997) (finding a court's power to enter nunc pro tunc judgments under Rule 74.06(a) "exists so that the court can cause its records to represent accurately what occurred previously"). A Rule 74.06 "correction is confined to 'that which was *actually done . . .* it may not be used to order that which was *not* actually done, or to change or modify the action which was taken.'" *McGuire* 447 S.W.3d at 663 (alteration in original) (emphasis in original) (internal quotation omitted).

While section 408.040 may impose a duty on the court to include post-judgment interest in its judgment, "[t]he narrow purpose of [Rule 74.06(a)] is to allow a court to make a judgment conform to the *record*, not, as [Cole] would have it, to conform to the requirements of a *statute*." *See id.* (emphasis in original). For the circuit court to amend its judgment under Rule 74.06(a), evidence in the record must show the circuit court intended to include a post-judgment interest rate or order payment of such interest at the time the original judgment was entered. *See id.* The circuit court's November 2022 judgment did not award Cole post-judgment interest, and the record does not show the circuit court intended to include post-judgment interest. Further, Cole did not request post-judgment interest until his January 20, 2023, motion to amend, which, as explained above, was untimely. Thus, "even if [] post-judgment interest is mandated by [section 408.040.3]," the circuit court's "omission of an award of interest cannot be considered a mere clerical error" that may be corrected via Rule 74.06(a). *Id.* at 667. The circuit court

did not have authority under Rule 74.06(a) to enter its January 20, 2023, amended judgment.

**B. The Circuit Court's Judgment was Final, and It Did Not Have Jurisdiction to Award Cole Post-Judgment Interest**

Alternatively, Cole argues that, under Rule 74.01(b), the circuit court's November 2022 judgment did not become final on January 12, 2023, because the judgment failed to adjudicate KCSR's liability under section 408.040 or dispose of the last remaining claim in the suit – Cole's right to recover post-judgment interest from KCSR under section 408.040. Thus, Cole asserts Rule 75.01's 30-day time limit had not begun to run until the circuit court issued its amended judgment in January 2023, making Cole's January 20, 2023, motion to amend timely.

Rule 74.01(b) states in relevant part:

> [A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order . . . is subject to revision at any time before entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Even though section 408.040.3 may require the circuit court to award post-judgment interest, Cole never requested such an award and never affirmatively advanced in the circuit court a claim under section 408.040.3 until after the circuit court's judgment became final. In a similar case, this Court has found the post-trial award of post-judgment interest to be improper. *See McGuire*, 447 S.W.3d at 666. In *McGuire*, the circuit court entered judgment against the defendant and awarded the plaintiffs damages, but the judgment did not award post-judgment interest as required by section 408.040. *Id.* at 661. The plaintiffs

24

did not file a timely authorized after-trial motion seeking an award of post-judgment interest. *Id.* at 662. After an appeal was concluded and finalized, the plaintiffs filed a motion in the circuit court requesting the court award post-judgment interest and set an accompanying interest rate pursuant to section 408.040. *See id.*

In *McGuire*, the circuit court sustained the plaintiffs' motion and retroactively amended its original judgment as the plaintiffs requested. *Id.* On appeal, this Court reversed the circuit court's amended judgment awarding the plaintiffs post-judgment interest. *Id.* at 667. The Court reasoned that, despite section 408.040's mandate, "there [was] no evidence in the record to suggest that the [circuit] court had intended to include the post-judgment interest in its original judgment but merely omitted the interest as a clerical error" and that the circuit court could amend its judgment only to "conform to the *record*, not, as the plaintiffs would have it, to conform to the requirements of a *statute*." *Id.* at 666-67 (emphasis in original).

*McGuire* did not directly confront the issue of whether all the claims and liabilities of the parties were adjudicated. However, the Court's reasoning demonstrates the record must show section 408.040 was invoked prior to the circuit court's judgment for a section 408.040 claim to remain unadjudicated. Thus, the circuit court lacked jurisdiction to amend the judgment and award post-judgment interest in that matter. *See McGuire*, 447 S.W.3d at 667.

Despite the mandatory language of section 408.040, the record must indicate a section 408.040 claim was asserted by a party or contemplated by the circuit court for a claim under section 408.040 to be deemed unadjudicated. Cole did not request

post-judgment interest in his petition or in a timely after-trial motion, and the record does not show the circuit court contemplated awarding post-judgment interest before it lost jurisdiction. Consequently, when the circuit court overruled KCSR's after-trial motions on January 12, 2023, the November 2022 judgment became final and the circuit court lost jurisdiction to amend its judgment thereafter.

## Conclusion

This Court affirms in part and vacates in part the circuit court's judgment. The circuit court did not err in overruling KCSR's motion for a new trial because Foulk's testimony regarding her statements to KCSR's attorneys was not protected by attorney-client privilege. The circuit court erred, however, in submitting Instruction 8 and the corresponding verdict director to the jury and overruling out-right KCSR's motion for directed verdict, therefore depriving KCSR of its contributory negligence defense under Cole's negligence *per se* submission. Further, because the circuit court's judgment was final, the circuit court did not have authority or jurisdiction to amend its judgment to award post-judgment interest.

Accordingly, this Court affirms the circuit court's judgment in Cole's favor but vacates the circuit court's damages award of $12 million and post-judgment interest. This matter is remanded to the circuit court for the limited purpose of modifying its judgment

26

to reduce Cole's award to $9.48 million in accordance with the jury's assessment of fault.[9]

This modified judgment shall be entered without post-judgment interest.

_____
W. Brent Powell, Judge

All concur.

---

[9] While KCSR argues it is entitled to a new trial, the Seventh Circuit in *Fletcher* – on which KCSR relies in support of its appeal – did not order a new trial but, rather, remanded the case to the district court with directions to reduce the employee's damages award consistent with the jury's assessment of fault on the general negligence claim. *Fletcher*, 568 F.3d at 641. This is the appropriate remedy as there is no reason to retry this matter when KCSR does not argue the evidence of the Illinois close clearance regulation violation was not admissible in Cole's general negligence claim. *See, e.g., Ries v. Nat'l R.R. Passenger Corp.*, 960 F.2d 1156, 1165 (3d Cir. 1992); *Robertson v. Burlington N. R.R. Co.*, 32 F.3d 408, 409 (9th Cir. 1994). For these reasons, this case is remanded for the circuit court to enter the judgment that should have been entered without conducting a new trial.