**CHICAGO TITLE INSURANCE COMPANY, Plaintiff/Respondent,**

v.

**Louis F. MERTENS, III., Defendant/Appellant.**

**No. 63293.**

Missouri Court of Appeals, Eastern District, Division Three.

June 30, 1994.

Barry S. Ginsburg, Clayton, for appellant.

Robert E. Jones, Clayton, for respondent.

SIMON, Presiding Judge.

Louis F. Mertens, III, appellant, appeals a judgment entered on a jury verdict in an action involving the assignment of a promis-

sory note, in favor of Chicago Title Insurance Company, respondent. The jury also found appellant 66⅔ per cent at fault on his counterclaim.

Appellant raises three points on appeal. First, that the trial court erred in submitting instruction number 12 on the counterclaim since comparative fault does not apply to a case involving only economic damages. Second, that even if the submission of the comparative fault instruction was proper in a case seeking only economic damages, the submission was improper because there was not sufficient evidence to support the submission. Finally, that the trial court erred in not granting appellant's motion for a judgment notwithstanding the verdict rendered in favor of respondent because as a matter of law respondent was not entitled to judgment upon the note because it was seeking indemnity for its own negligence. Respondent did not appeal the judgment on the counterclaim, but does allude to proximate causation in its brief.

We affirm in part, reverse and remand in part.

We view the evidence in a light most favorable to the verdict. On September 15, 1988, appellant executed a revolving loan agreement with the Household Realty Corporation (HRC), through which HRC loaned appellant $26,600.00 at a variable rate of interest. As security for the loan, appellant executed a second deed of trust on his house in favor of HRC. To protect its interest in appellant's house, HRC obtained a lender's title insurance policy from respondent, through respondent's agent, Investors Title Company (ITC). The policy insured HRC's status as the holder of a second priority lien on appellant's property. Prior to issuing the title insurance policy, ITC's employees searched the records of the St. Louis County Recorder of Deeds to determine if any liens or encumbrances had been filed against appellant's house. The United States Internal Revenue Service (IRS) had filed a lien against appellant's property on September 9, 1988, to recover $55,114.37. ITC's employees did not discover this lien, and the title insurance policy did not list this lien as an exception to coverage. As a result of the IRS tax lien, HRC's lien

became third in priority. A second IRS tax lien was filed against appellant's house on October 25, 1988, in the amount of $22,629.54.

Once the first IRS tax lien was discovered, HRC found itself in an insecure position from which to recover the outstanding balance of its loan, and filed a claim upon the title insurance policy. As a result, respondent paid the outstanding balance on the note, in the amount of $26,260.97, to HRC and took an assignment of the note on or about June 26, 1990. Respondent notified appellant of this assignment but did not receive any payments on the note.

Subsequently, appellant attempted to sell his house and did have a contract but could not close because the contract price was not sufficient to pay the first deed of trust, the tax lien, and the deed of trust held by HRC. As a result, appellant defaulted on the first deed of trust, and Community Federal Savings and Loan Association (Community), the holder of the first deed of trust, foreclosed.

On October 22, 1990, respondent filed a petition seeking the balance due on the promissory note which it received by assignment. Appellant answered by denying that he owed any amount to respondent, and filed a counterclaim in two counts alleging theories of negligence and third party beneficiary of the title insurance contract between respondent and HRC. The counterclaim alleged that: (a) appellant would not have borrowed money from HRC if he knew that the loan would not be secured by the real estate and a valid second deed of trust; (b) as a result of respondent's failure to discover the tax lien, appellant could not convey title to the purchaser of his house; (c) since appellant could not convey title on his house, appellant was unable to pay off the loans to Community and HRC; and (d) since appellant's contract to sell his house was for $93,-000.00, but at foreclosure sold for $60,000.00, appellant was damaged by losing the equity in his house.

On respondent's claim, the jury found in its favor and awarded $26,000.00 in actual damages and $10,000.00 in interest. The trial court entered a judgment upon the verdict for an additional $4,000.00 in contractually provided attorney's fees and $56.20 in expenses. On the counterclaim, the jury found appellant to be 66⅔ per cent at fault, and his damages to be $36,000.00. Respondent offered the following instruction to the trial court for submission:

In your verdict you must assess a percentage of fault to [Appellant] whether of not [Respondent] was partly at fault, if you believe:

First, [Appellant] knew, or in the exercise of ordinary care, should have known that notices of lien were filed by the Internal Revenue Service on September 9, 1988 and October 25, 1988 and

Second, [Appellant] was thereby negligent, and

Third, such negligence of [Appellant] directly caused or directly contributed to cause any damage Defendant may have sustained.

The trial court submitted this instruction over appellant's objection. Appellant unsuccessfully moved for a judgment notwithstanding the verdict, or in the alternative, for a new trial.

■ For the sake of a logical presentation, we will address appellant's third point first. Here, appellant contends that respondent's claim for relief should be barred since it obtained the assignment of the note from HRC as a result of paying a claim on the title policy due to its negligence in failing to discover the tax lien. Appellant claims that had respondent performed the title search properly, appellant would not have received the loan from HRC, and subsequently, would not owe on the note. Respondent contends that it is not seeking indemnity for its own negligence, but rather is attempting to recover as an assignee of a promissory note.

The pleadings indicate that respondent sought recovery on the note and was not seeking indemnity. In his answer, appellant does not raise any affirmative defense, but essentially denies each allegation of respondent's petition. The record on appeal does not contain the instructions submitted on respondent's petition and the record is silent as to any objections to those instructions or any offer by appellant to submit any instructions. Further, the record clearly shows sufficient

evidence to support the submission of a verdict directing instruction on the note and the jury's verdict.

In any event, the record clearly reveals that appellant received notices regarding the tax lien, and appellant knew or had reason to know of the lien. Once appellant received the loan, he used the money to pay his bills and remodel his home.

■ Appellant waited until he reaped the full benefit of the loan and now attempts to argue that the loan should never have been approved in the first place. To allow appellant to reap the benefit of the loan without repaying it would be unjust. Unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust. *American Civil Liberties Union/Eastern Missouri Fund v. Miller*, 803 S.W.2d 592, 595[4] (Mo. banc 1991). Accordingly, the trial court properly denied appellant's motion for judgment notwithstanding the verdict rendered in favor of respondent.

■ We shall consider appellant's first and second points together. Essentially, appellant contends that the trial court erred in submitting a comparative fault instruction on appellant's counterclaim in that comparative fault is not applicable to situations involving economic loss only, and in any event, the evidence did not support the submission.

■ Comparative fault was adopted in *Gustafson v. Benda*, 661 S.W.2d 11, 15[3] (Mo. banc 1983). The Uniform Comparative Fault Act (UCFA), together with the commissioner's comments, was appended to *Gustafson* and made part of the opinion. The direction of our Supreme Court was to apply the UCFA to appropriate cases "insofar as possible." *Gustafson*, 661 S.W.2d at 15. However, the UCFA is merely to serve as a guide. It was not the purpose of *Gustafson* to enact the UCFA as a statute of the State of Missouri, establishing substantive principles for every eventuality. *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491, 492–3 (Mo. banc 1986).

Using the UCFA as a guide, we note that § 1(a) states that the Act covers "damages for injury or death to person or harm to property." The commissioner's comments following that section define *"Harms Covered"* to those which involve "physical harm to persons or property ... It does not include matters like economic loss resulting from a tort such as negligent misrepresentation, or interference with contractual relations or injurious falsehood, or harm to reputation resulting from defamation."

In *Murphy v. City of Springfield*, 738 S.W.2d 521, 530[12] (Mo.App.1987), the court held that comparative fault does not apply to cases involving economic loss resulting from a tort such as negligent misrepresentation.

Here, the loss appellant suffered was not from physical harm but rather as a result of respondent's alleged negligent performance of its contractual obligations. Nothing in the UCFA indicates that comparative fault should apply in a case involving only economic damages. As a result, the trial court erred in submitting the instruction to the jury regarding appellant's counterclaim. Therefore, the judgment on the counterclaim is reversed and remanded for proceedings consistent with this opinion.

The judgment is affirmed in part, reversed and remanded in part.

PUDLOWSKI and KAROHL, JJ., concur.