CHILDREN'S WISH FOUNDATION
INTERNATIONAL, INC.,
Appellant,

v.

MAYER HOFFMAN McCANN,
P.C., et al., Respondents.

No. SC 90944.

Supreme Court of Missouri,
En Banc.

Feb. 8, 2011.

Michael W. Blanton, Law Office of Michael W. Blanton, Leawood, Kan., for Appellant.

John C. Aisenbrey, Russell J. Keller, Robin K. Carlson, Stinson Morrison Hecker LLP, Kansas City, for Respondents.

RICHARD B. TEITELMAN, Judge.

Children's Wish Foundation, International, Inc. (CWF) filed a professional negligence action against Mayer Hoffman McCann, P.C. (Mayer Hoffman) and CBIZ Accounting, Tax & Advisory of Kansas City, Inc. (CBIZ) relating to Mayer Hoffman's audit of CWF's financial statements and CBIZ's preparation of CWF's tax returns. The jury returned verdicts in favor of Mayer Hoffman and CBIZ.

In its sole point on appeal, CWF contends the trial court erred in submitting a contributory negligence instruction. The central premise of the comparative fault rule is that the law should allocate fault according to the parties' conduct. This premise holds true in professional negligence cases independent of the nature of the plaintiff's injury. Therefore, the trial court erred in submitting a contributory negligence instruction. The judgment is reversed, and the case is remanded.

## FACTS

CWF is a charitable organization that provides gifts to terminally ill children. One of the fundraising methods was to accept "gifts in kind." A gift in kind is a donation of property to a charity. CWF procured the gifts in kind by paying an administrative fee to two companies that would ship the gifts in kind to CWF. CWF then distributed the gifts in kind to hospitals and Ronald McDonald houses. The inventory of gifts in kind was handled and documented by CWF employees on a spreadsheet.

CWF retained Mayer Hoffman to audit CWF's financial statements and to express an opinion regarding the accuracy of the financial statements, including records pertaining to the gifts in kind. The audit engagement letter required CWF to provide complete, accurate financial records and information to Mayer Hoffman. CWF provided Mayer Hoffman with the spreadsheet reflecting the inventory of gifts in kind.

Mayer Hoffman discovered that in the year preceding the audit, CWF experienced a tenfold increase in gifts in kind. Mayer Hoffman further discovered that many of the gifts received by CWF already had been distributed. Mayer Hoffman consulted outside sources to determine the fair market value of the gifts in kind and concluded that the fair market value stated by CWF was materially accurate. Mayer Hoffman issued an audit report concluding that CWF's financial statements fairly represented CWF's financial position in accordance with generally accepted accounting principles. Mayer Hoffman forwarded the financial statements to CBIZ, which prepared CWF's 1999 tax return.

CWF's financial statements were not accurate. The records showed that CWF had received 17 pallets of a particular book when, in fact, it had received only seven pallets of books. The problem arose because the quantity of each gift in kind

contributed by CWF was calculated by subtracting the number of pallets of the item remaining in CWF's inventory from the beginning number of pallets shown on the spreadsheet. Mayer Hoffman assumed the beginning number of each gift in kind shown on the spreadsheet was the quantity of the item received by CWF. In fact, the beginning number of each gift in kind shown on the spreadsheet was the quantity of the item ordered. Compounding the problem was the fact that CWF sometimes received fewer pallets of an item than it had ordered and did not have a process in place to record these discrepancies. The mistaken use of the quantity of each gift in kind ordered versus received as the "starting point" for calculating the quantity of each gift in kind contributed resulted in an overstatement of the value of gift in kind contributions on CWF's financial statements by approximately $1.31 million.

Although Mayer Hoffman was provided with the inventory spreadsheet, there was testimony at trial about waybills, which would accompany shipments of gifts in kind. CWF did not supply the waybills to Mayer Hoffman. The waybills were a record of what the shipper showed had been shipped. A CWF employee would "check in" an order and sign off on the waybills. The employee who checked in merchandise said she would note on the waybill if the inventory received differed from what the waybill indicated had been shipped. This employee testified that she did "not believe any of the counts came out wrong. Whatever they said was delivered pallet wise was delivered." Although the waybills were not provided to Mayer Hoffman, it is not clear that the waybills would have revealed the discrepancy between the quantity of a gift in kind item ordered versus the quantity shipped and received.

In October 2000, the Pennsylvania court filed an order to show cause against CWF. The order to show cause related, in part, to the overstated value of the gift in kind contributions shown on CWF's 1999 tax return. After Pennsylvania opened its investigation, CWF conducted an internal investigation and discovered the erroneous records. CWF then filed the instant professional negligence action against Mayer Hoffman and CBIZ.

At trial, Mayer Hoffman and CBIZ defended by asserting that CWF failed to provide accurate records in support of the audit. Mayer Hoffman and CBIZ offered a contributory negligence instruction, which was submitted to the jury over CWF's objection. The jury returned verdicts in favor of Mayer Hoffman and CBIZ.

In its sole point on appeal, CWF asserts that the trial court erred by submitting a contributory negligence instruction. More specifically, CWF argues that contributory negligence should not apply in a negligence action that involves only economic damages and no personal injury.

## STANDARD OF REVIEW

"This [C]ourt reviews de novo, as a question of law, whether a jury was properly instructed." *Harvey v. Washington*, 95 S.W.3d 93, 97 (Mo. banc 2003). "A faulty instruction is grounds for reversal if the defendant has been prejudiced." *State v. Carson*, 941 S.W.2d 518, 523 (Mo. banc 1997) (citing *State v. Betts*, 646 S.W.2d 94, 99 (Mo. banc 1983)).

## ANALYSIS

The disputed instruction in this case is Instruction No. 11, which instructed the jury as follows:

You must find plaintiff contributorily negligent if you believe:

First, plaintiff erroneously stated to defendant Mayer Hoffman McCann, P.C. that its accounting records reflected the gifts-in-kind plaintiff had received, or plaintiff provided to defendants Mayer Hoffman McCann, P.C. and CBIZ Accounting, Tax & Advisory of Kansas City, Inc. erroneous shipping records to Ronald McDonald House, and

Second, plaintiff, in one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence of plaintiff directly contributed to cause its injury.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that an ordinarily careful person would use under the same or similar circumstances.[1]

CWF asserts that Instruction No. 11 was erroneous because *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), abrogated contributory negligence in favor of comparative fault. CWF argues that the jury should have been instructed on comparative fault. *Gustafson*, however, involved a claim for personal injury, and subsequent cases have yielded conflicting answers regarding the applicability of comparative fault to negligence actions that do not involve personal injury. Consequently, this appeal presents the unresolved issue of whether comparative fault applies in a professional negligence action alleging only economic damages.

## I. Comparative fault applies to CWF's professional negligence claim

■■■ Prior to *Gustafson*, Missouri followed the contributory negligence rule.

Under the contributory negligence rule, a plaintiff could not recover damages if the plaintiff's own negligence directly contributed in any way to the injuries sustained. *Gramex Corp. v. Green Supply, Inc.*, 89 S.W.3d 432, 439 (Mo. banc 2002), citing *Moore v. Kansas City & I. Rapid–Transit Ry.*, 126 Mo. 265, 29 S.W. 9, 12 (1894). Therefore, even if the defendant's conduct was the primary cause of the plaintiff's injury, the defendant could escape all liability under the contributory negligence rule. The contributory negligence rule proved unsatisfactory as courts came to recognize that negligence actions are premised on the culpability of the parties. *Id.* In other words, negligence actions, which are based on the breach of a legal duty of care, fundamentally are premised on the concept of fault. *See, e.g., Bell v. Poplar Bluff Physicians Group, Inc.*, 879 S.W.2d 618, 623 (Mo.App.1994) ("malpractice, negligence, error, and mistake all connote some type of fault, whether or not intentional"). The all-or-nothing allocation of fault under contributory negligence ignored the fact that the parties to a negligence action generally are held to some standard of care and that, in some cases, the injury at issue was caused by a breach of the standard of care by both parties. Therefore, the contributory negligence rule operated to "irrationally impose total responsibility upon one party for the consequences of the conduct of both parties." *Earll v. Consolidated Aluminum Corp.*, 714 S.W.2d 932, 936 (Mo.App.1986).

To ameliorate the shortcomings of the contributory negligence rule, *Gustafson* adopted a "comprehensive system" of comparative fault in which the jury decides the

---

1. Instruction No. 11 noted as its source: "MAI No. 32.07(B) (1996) modified; MAI 11.02 *Blackstock v. Kohn*, 994 S.W.2d 947, 952 n. 2 (Mo. banc 1999)." At the instruction conference and in the motion for new trial, CWF objected to Instruction No. 11 on the grounds that a contributory negligence instruction was improper in a negligence action involving only economic loss. CWF preserved its objection to the contributory negligence instruction.

relative fault of the parties and assesses damages accordingly. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 107 (Mo. banc 1996). *Gustafson* held that "[i]nsofar as possible this and future cases shall apply the doctrine of pure comparative fault in accordance with the Uniform Comparative Fault Act §§ 1–6, 12 U.L.A. Supp. 35–45 (1983)." 661 S.W.2d at 15. Although *Gustafson* did not enact the Uniform Comparative Fault Act (UCFA) as substantive law, *Lippard v. Houdaille Industries*, 715 S.W.2d 491, 492–493 (Mo. banc 1986), *Gustafson* and subsequent cases have established that the UCFA informs the application of comparative fault in Missouri.

The UCFA provides that "[i]n an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." UCFA Section 1(a), 12 U.L.A. Master Ed. 125 (2008). The UCFA further provides that comparative fault is not recommended to extend to:

> [M]atters like economic loss resulting from a tort such as negligent misrepresentation, or interference with contractual relations or egregious falsehood, or harm to reputation resulting from defamation. But failure to include these harms specifically in the Act is not intended to preclude application of the general principle to them if a Court determines that the common law of the state would make the application.

UCFA Section 1 Cmt., 12 U.L.A. Master Ed. 125 (2008).

This case involves a negligence action involving economic loss from professional malpractice. The UCFA comment does not provide a rationale for limiting comparative fault to cases involving personal injury and expressly leaves open the possibility that comparative fault can apply to economic loss cases if consistent with state common law. If the comparative fault rule set forth in the UCFA and adopted in *Gustafson* was theoretically incompatible with economic loss cases, the UCFA would not have left open the possibility of applying comparative fault in economic loss cases. A more plausible interpretation of the comment is that it accounts for the fact that many states, including Missouri, traditionally have restricted the availability of tort damages in cases alleging only economic loss.[2] The UCFA addresses the application of comparative fault, not the kind of damage or injury that may be pleaded in a tort action. A recommendation to extend comparative fault to economic loss cases would have exceeded the intended scope of the UCFA by effectively recommending that states not only adopt comparative fault but also enlarge the scope of damages recoverable in a tort action. The adoption of comparative fault in economic loss cases is not necessarily inconsistent with the UCFA.

The Missouri cases subsequent to *Gustafson*, although inconsistent in the application of comparative fault in economic loss cases, largely have concluded that *Gustafson*'s abrogation of contributory negligence does not extend to economic

---

2. The economic loss doctrine does not apply in this case. Missouri recognizes tort liability in professional negligence cases involving only economic loss. *See, e.g., Business Men's Assurance Co. of America v. Graham*, 891 S.W.2d 438, 453 (Mo.App.1994) (tort recovery permitted when a client "sues for breach of a duty recognized by law as arising from the relationship or status the parties have created by their agreement"); *Miller v. Ernst & Young*, 892 S.W.2d 387 (Mo.App.1995) (accounting malpractice).

loss negligence cases.[3] Nonetheless, this Court has not addressed directly the issue and now holds that the comparative fault rule established in *Gustafson* applies to claims of economic loss caused by professional negligence. There is no compelling reason to limit the application of comparative fault based on the nature of the injury. The defining feature of negligence actions is not the nature of the damages but the negligent breach of a legal duty of care that results in injury or loss to the plaintiff. Negligence actions are fault-driven, whether the plaintiff suffers a broken leg in a car accident or the loss of money due to professional negligence. There is nothing inherent in the nature of the type of injury that warrants the application of comparative fault in the former case and contributory fault in the latter case. Consistency dictates that comparative fault apply in both cases.

Mayer Hoffman and CBIZ assert that because this case involves a contractual relationship, it is inappropriate to apply comparative fault because the parties can allocate the risk of loss in the contract. This objection does not withstand scrutiny. First, the same objection could be made to the application of contributory fault. It is not necessarily the case that the application of contributory fault will be consistent with any agreement the parties may have had with respect to the allocation of risks and duties. Only in a very one-sided contract would the parties agree the client is barred from all recovery due to the slightest degree of negligence by the client.

Second, and more importantly, CWF's cause of action is not premised on the contract. It is premised on the professional duty recognized by law that arises from the relationship created by the accountant-client relationship. *See, e.g., Business Men's Assurance Co. of America v. Graham*, 891 S.W.2d 438, 453 (Mo.App.1994) (tort recovery permitted when a client "sues for breach of a duty recognized by law as arising from the relationship or status the parties have created by their agreement"). Comparative fault should apply in this professional negligence case for the same reasons that it applies in a negligence action involving personal injury.

Finally, the prevailing view is that comparative negligence applies in negligence actions involving only economic loss. *Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1090 (Alaska 2002).[4] Although the cases from other jurisdictions do not necessarily involve identical factual scenarios, the fact remains that each holds that the state's law of comparative fault generally should apply to negligence actions irrespective of the nature of the damages. Likewise, this Court concludes that principles of compar-

---

3. For instance, in *Chicago Title Ins. Co. v. Mertens*, 878 S.W.2d 899, 902 (Mo.App.1994), the appeals court, relying on the UCFA and comments, held that the trial court erred in submitting a comparative fault instruction on a negligence counterclaim that alleged only economic loss. In *Miller v. Ernst & Young*, 892 S.W.2d 387, 388 n. 1 (Mo.App.1995), the court, citing *Mertens*, concluded that "in this case, involving only economic damages, contributory negligence remains an absolute defense." *See also Murphy v. City of Springfield*, 738 S.W.2d 521, 529–530 ("we doubt that Missouri will apply comparative fault any broader than the [UCFA]"); *Roskowske v. Iron*

*Mountain Forge Corp.*, 897 S.W.2d 67, 73 (Mo.App.1995) ("[c]omparative fault does not apply to a case involving purely economic loss").

4. *See also Scioto Memorial Hospital Association v. Price Waterhouse*, 74 Ohio St.3d 474, 659 N.E.2d 1268, 1272 (1996); *Florenzano v. Olson*, 387 N.W.2d 168 (Minn.1986); *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 945 P.2d 317, 353 (Ariz.App.1996); *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So.2d 334, 336 (Fla.1997); *ESCA Corp. v. KPMG Peat Marwick*, 135 Wash.2d 820, 959 P.2d 651 (1998).

ative fault that to date have been applied in negligence actions involving personal injury also should be applied in professional negligence actions that allege economic loss. Consequently, the trial court erred in submitting contributory negligence in Instruction No. 11.

## II. The instructional error was prejudicial

■■■ To reverse on grounds of instructional error, the party claiming the error must establish prejudice because the instruction misdirected, misled or confused the jury. *Sorrell v. Norfolk Southern Railway Co.*, 249 S.W.3d 207, 209 (Mo. banc 2008). Instructional error is presumed prejudicial when the verdict is in favor of the party at whose instance the instruction is given. *Karnes v. Ray*, 809 S.W.2d 738, 742 (Mo.App.1991). Here, Mayer Hoffman requested the contributory negligence instruction, and the jury returned a defense verdict. The presumption of prejudice is not rebutted. Accordingly, CWF was prejudiced because Instruction No. 11 improperly permitted the jury to find that any negligence on the part of CWF served as a bar to any recovery.

## CONCLUSION

The judgment is reversed, and the case is remanded.

All concur.